# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**PAUL PITOCHELLI,**

      **Plaintiff,**

**v.**                                                                                                **Case No: 6:20-cv-135-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Paul Pitochelli (Claimant) appeals the Commissioner of Social Security's final decision denying his application for a period of disability and disability insurance benefits. Doc. 1. Claimant argues that the decision of the Administrative Law Judge (ALJ) is not based on substantial evidence and additional evidence warrants remand under sentence six of 42 U.S.C. § 405(g). Docs. 1, 29. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED** and Claimant's request for remand is denied.

### I.  Procedural History

Claimant's application for a period of disability and disability insurance benefits was denied initially and upon reconsideration. A hearing was conducted and on January 15, 2019, the ALJ found that Claimant was not disabled and issued an unfavorable decision. The Appeals Council denied Claimant's request for review.

The parties have filed a Joint Memorandum which includes Claimant's reply and the Commissioner's sur-reply. Doc. 29.

## II. The ALJ's Decision

In the decision, the ALJ found that Claimant has the following severe impairments: cardiomyopathy, degenerative disc disease, and status post right fibula fracture with residual pain. R. 22. The ALJ further found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. *Id*.

The ALJ found that Claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) except he could no climb ladders, ropes, or scaffolds; he could frequently climb ramps and stairs; he could occasionally crouch, crawl, and stoop; and he could frequently balance and kneel. R. 23.

The ALJ concluded that Claimant is not capable of performing any past relevant work. R. 29. Ultimately, the ALJ found that Claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2013, the alleged onset date, through December 31, 2015, the date last insured. R. 30.

## III. Discussion

In his one claim for review, Claimant seeks a remand based on "new evidence" that did not exist during the administrative process. As an initial matter, the Commissioner asserts that Claimant only requests a remand under sentence six of 42 U.S.C. § 405(g) and any argument that a remand is warranted under sentence four of the same section is waived. Doc. 29 at 27. In the Joint Memorandum, the parties represent that the standard of review is appropriately analyzed pursuant to sentence six. Doc. 29 at 2. Doc. 29 at 2, 20. In light of this agreement, it appeared at first blush that the Commissioner's waiver argument was unnecessary. However, in the brief, Claimant hints at a direct assignment of error to the ALJ's decision which is not the focus of a sentence six analysis. *See e.g.*, Doc. 29 at 23. Also, Claimant's statement of relief seeks a remand

pursuant to "sentence four of 42 U.S.C. section 405(g) for a supplemental hearing." Doc. 29 at 47.

This appears to be a scrivener's error but, to be clear, to the extent that Claimant's statements regarding the ALJ's decision (which statements are intertwined with the sentence six argument) are presented to raise a separate request for relief under sentence four, the claim is insufficient because it is presented in a perfunctory manner. *See Jacobus v. Comm'r of Soc. Sec.*, 664 Fed. Appx. 774 (11th Cir. 2016) (stating that the claimant's perfunctory argument was arguably abandoned.); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived."); *Gaskey v. Covlin*, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision).

Moving on, the parties are correct in their initial statement that the "new evidence" issue is properly analyzed under sentence six because it was not presented to the ALJ or the Appeals Council. Pursuant to § 405(g), there are two different types of remand available. Under sentence four, a court may affirm, modify, or reverse the decision of the Commissioner with or without a remand. A sentence four remand results from an error of the Commissioner. The court enters a final judgment and may remand for further proceedings. A sentence four remand is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Under a sentence four remand, when a claimant has submitted information for the first time to the Appeals Council, a claimant is not required to show good cause. *Melkonyan v. Sullivan*, 501 U.S. 89-99-100 (1991).

The sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner of Social Security for consideration of new evidence that previously was unavailable. To show that a sentence six remand is needed, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

For the first time to the District Court, Claimant submits as "new evidence" a letter from his attorney dated March 24, 2019 and addressed to Casey W. Langel, PA-C (Langel) and Devon Datta, M.D. (Datta). The letter states as follows:

> My firm represents your patient Paul Pitochelli in his appeal for Social Security disability benefits. Please find a release form signed by Mr. Pitochelli. Thank you for completing the enclosed Medical Questionnaire on 12/05/18. You stated that the limitations were effective on 10/26/16 – the date your began treatment. Unfortunately, I need to determine your patient's limitations (if any) a year prior to that date. I note that Mr. Pitochelli had been treated for back pain on 1/13/12 and 2/17/12 by Dr. Datta. He received thoracic transforaminal epidural injections on 2/08/12 at T8-9 and on 2/15/12 at T9-10 bilaterally by Dr. Voepel. On 06/13/12, he received radiofrequency ablations at T9-12.
>
> Please review the BACK Center records I mention above as well as the enclosed records from Joseph J. Strater, D.C. for the period 11/12/14 through 5/03/16 (Exhibit 9F) and then answer the following question. Based upon a reasonable degree of medical probability, would your patient's limitations of 10/26/16 have been substantially different 11/16/15? ___ Yes ___ No  If yes, how would his limitations have been different? Please explain.

Doc. 29-1.

The box next to the question is checked "No," and Langel and Datta signed the letter in an area designated for their signatures on January 22, 2020. *Id*.

While the issue before the Court is based on the March 24, 2019 letter containing the January 22, 2020 opinion, the medical questionnaire and Dr. Strater's records mentioned in this letter at Exhibit 9F were in the administrative record. As context, the ALJ found the following:

> The undersigned gives lesser weight to the opinion of the claimant's treating provider Casey Langel, PAC (Exhibit 34F). In December 2018, she opined that the claimant could perform less than the full range of sedentary work except he could stand and sit for 30 minutes at one time for less than 2 hours total in an 8-hour workday. She also opined that he could not perform any postural maneuvers, he would have unspecified manipulative limitations, and he would be absent from work four or more days per month. Finally, PAC Langel indicated that these limitations had been present since October 2016, which the undersigned notes is almost one year after the claimant's date last insured. While the undersigned gives her opinion weight in light of her treating relationship with the claimant and in light of her opinion regarding the onset of the limitations, the undersigned notes that the claimant testified that they completed this form together and she based her opinion on the claimant's response to questions. As such, the undersigned finds her opinion is entitled to lesser weight.

R. 27-28.

After the ALJ's decision, Claimant's attorney requested that Langel and Datta revisit the issue of the date of the physical limitation. Doc. 29-1.

With respect to the first prong under sentence six, "[n]ew evidence is evidence that was not in existence or available to claimant at the time of the administrative proceeding." *Jones v. Comm'r of Soc. Sec. Admin.*, 497 Fed.Appx. 888, 892 (11th Cir. 2012) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007)). New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's hearing decision." *Hargress v. Comm'r Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018).

In the initial brief, Claimant does not address the first prong regarding the new or noncumulative nature of the letter other than to say that the opinion meets this definition. *See* Doc. 29 at 21. To the contrary, the Commissioner contends that since Langel and Datta completed the

form only in response to the request and as a review of the previous and existing records, the opinion is not actually "new." Doc. 29 at 28.

The Court agrees with the Commissioner. The attorney's request for the physician and the assistant to revisit the issue in order to refute the ALJ's opinion does not seem "new." If the Court accepts Claimant's position then a litigant would be permitted to shop for an opinion from an acceptable medical source or go back to their physician after-the-fact to reevaluate evidence already considered by the ALJ under the guise of calling it "new" each time an unfavorable decision is rendered. While the Court has not found binding authority exactly on point, the case the Commissioner cites is persuasive. Doc. 29 at 28, citing *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 140 (1st Cir. 1987) ("If a losing party could vault the 'newness' hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning.").

Even though Claimant did not discuss the first prong at length in his initial brief, he relies heavily on *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir. 1988) in the reply to oppose Commissioner's argument and reliance on *Evangelista*. Doc. 29 at 40. In *Cannon*, the ALJ rejected the plaintiff's contention that he was disabled due to cardiovascular problems. 858 F.2d at 1543-44. The plaintiff submitted a motion to remand based on new evidence. The Court of Appeals summarized the relevant facts as follows:

> From July 1 to July 17, 1987, after this appeal was filed, Cannon was hospitalized for chest pains and high blook pressure. Subsequently, Cannon filed a motion to remand his case to the Secretary in light of this new evidence. The evidence, submitted with the motion, indicates that upon his hospital discharge Cannon was advised that he could no longer return to gainful employment for an indefinite period of time. A physical capacities evaluation, completed by his treating physician, states that during an eight-hour work day Cannon could stand and walk less than six hours, only lift and carry five pounds, and not push or pull leg or arm

> controls.  The physician indicated that Cannon had these physical limitations since 'May 1985 probably.'  Cannon's physician concluded that Cannon had Class III cardiac disease which resulted in marked limitation of physical activity.  A letter from a vocational expert states that Cannon was unable to physically meet the requirements of sedentary or light work.  (*See*, Motion to Remand).

858 F.2d at 1546.

The Court of Appeals concluded that this evidence was new and noncumulative because it included an opinion of total disability from a treating physician and a vocational expert.  *Id*.

The Court finds that *Cannon* is inapposite to the facts of this case.  While the treating physician in *Cannon* "indicated" that the limitations began in "May 1985 probably," the Eleventh Circuit's decision on the newness of the evidence clearly took into consideration the *subsequent* hospitalization along with the vocational expert's letter.   It simply was not a case, as is here, of asking a physician to review evidence that existed before the ALJ's ruling.

Finally, Claimant takes issue with the Commissioner's contention that the evidence is cumulative because the ALJ already considered Langel's opinion.  Claimant argues that this position ignores the fact that Datta's opinion was never considered and he was the treating orthopedic surgeon.  Doc. 29 at 40.

First, as the Commissioner correctly states in the sur-reply, Claimant included the following in the Statement of Facts: "On December 5, 2018, Casey Langel, P.A. *and* Devin Datta, M.D. at the BACK Center completed a Medical Questionnaire at [Claimant's] request. . . Ms. Langel and Dr. Datta opined [Claimant's] condition could reasonably be expected to produce the pain in the bilateral legs, back, and thoracic spine.  [Claimant's] limitations 'first present' on October 31, 2016." Doc. 29 at 17, 44 (emphasis added).  As such, it was Claimant who represented to the Court that Datta also completed the questionnaire; a fact which belies his subsequent

contention that the opinion was "never considered." The Court is not persuaded that Claimant should avail by offering contradictory statements.

Second, assuming Claimant misspoke in the Statement of Facts and he is somehow not held to his representations to the Court, his argument regarding Datta is undercut by his own additional explanation regarding the physician's role offered within a footnote. The questionnaire includes both Langel and Datta's names. R. 744. In his footnote, however, Claimant states that "[a]s [Claimant's] physician's assistant, Casey Langel had previously signed on behalf of Dr. Datta on 12/05/2018 (Tr. 744)." Doc. 29 at 40 n.12. Accordingly, it appears that Claimant asserts that Datta had no part of the opinion because he did not actually sign it. The Court does not accept this argument without any authority that stands for the proposition that an opinion does not belong to a physician if an assistant permissibly endorses it with the physician's name.

Third, even if Datta had no hand in the questionnaire, the Court has already ruled that the March 24, 2019 letter is not considered "new evidence" because it includes an after-the-fact reevaluation of records which seems by definition to be cumulative.

But Claimant's request for relief does not fail just because the first prong does not weigh in his favor. Assuming *arguendo* that the January 22, 2020 opinion is "new" under the law, it is still not material. "To be material, the evidence must be relevant and probative so that there is a reasonable probability that it would change the administrative outcome." *Caulder*, 791 F.2d at 877.

Claimant asserts that the "new evidence removes the ALJ's argument that the December 5, 2018 opinion from Ms. Langel did not extend back to the time before the date last insured (December 31, 2015)." Doc. 29 at 23. Since the December 5, 2018 opinion reflects that he could not lift more than 10 pounds occasionally due to increased back pain, pars defect, and spinal

stenosis, Claimant argues that there is a reasonable probability that the "new evidence" would change the administrative result. Doc. 29 at 23. Claimant also states that the "new evidence" provides objective medical support for Claimant's testimony and statements in the record and is, therefore, material. *Id*. at 24.

However, while the January 22, 2020 opinion contained in the March 24, 2019 letter now asserts that Claimant's limitations would not have been substantially different on November 16, 2015, this statement does nothing but contradict the previous assertion from the medical questionnaire that the limitations were first present on October 31, 2016. Doc. 29-1, R. 744. The Court agrees with the Commissioner that Claimant fails to show that a reasonable probability exists that the ALJ's decision would change with reasonable probability based on a "new opinion" that contradicts an earlier one.

Again, in the reply, Claimant tries to refute the Commissioner's position with the argument that there is no contradiction because Datta did not actually sign the December 5, 2018 opinion. Doc. 29 at 41. The Court has already made a determination on that argument and Claimant still offers no support for the proposition that a document signed on a physician's behalf cannot be considered that physician's opinion.

Further, even if the "new" opinion is not deemed a contradiction, the ALJ gave the December 5, 2018 opinion "lesser weight" because Claimant testified that he completed the form together with Langel and Langel based the opinion on the Claimant's response to the questions. R. 27-28. As the Commissioner contends, an ALJ may reject an opinion on this basis alone because subjective complaints "cannot serve as the sole basis for a medical opinion." *Tredik v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5496290, at *2 (11th Cir. Sept. 11, 2020) (citing *Crawford*, 363 F.3d at 1159). The Court agrees with the Commissioner that there is no explanation in the

initial brief as to how the "new" January 2020 opinion refutes the ALJ's appropriate reason for discounting the December 2018 opinion. As such, there is no reasonable probability that the decision would be different.

The Court notes that for the first time in his reply, Claimant states that "[c]learly, the new opinion was based on a review of Dr. Datta's treatment notes from 2012 (Plaintiff received thoracic transforaminal epidural injections and radiofrequency ablations) as well as a review of Dr. Strater's treatment notes." Doc. 29 at 41. In other words, Claimant argues that the "new" opinion can counter Langel's initial reliance on subjective complaints because it is based on a review of the records and, therefore, can reasonably change the outcome of the administrative result.

The Court does not share the same presumption because of the nature of the opinion which is in the form of a check mark. *See* Doc. 29-1. While the attorney may have requested a review of certain records, the physician and the assistant did not include the basis for the conclusory opinion and certainly did not state that the opinion was based on anything other than the same subjective complaints. As such, the check mark refutes nothing and does not demonstrate that the "new" opinion is material.

Newness and materiality aside, the Court finds that there is also no showing of good cause for Claimant's failure to incorporate the evidence at the administrative level. Claimant contends that good cause is present merely because the opinion did not exist during the administrative proceedings. Doc. 29 at 26. The Court does not agree that good cause is automatically shown because the evidence came later. *See Cumbess v. Astrue*, 2009 U.S. Dist. LEXIS 86644, at *5-6 (M.D. Ga. Sept. 22, 2009) ("Contrary to the assertion by claimant, the good cause requirement is not satisfied by merely demonstrating that the evidence did not exist when the matter was still at the administrative level. If this was the case, any plaintiff who was not successful at the

administrative level could get a second chance simply by procuring and submitting a newly created report from a physician or other professional"); *Harris v. Apfel*, 1999 U.S. Dist. LEXIS 16944, at *5 (S.D. Fla. Oct. 14, 1999) (rejecting as a mischaracterization of the good cause element the plaintiff's assertion that the non-existence of the evidence before the ALJ's decision automatically satisfies the good cause requirement.).

So, the Court must determine based on the facts if Claimant has established that good cause exists for his failure to present the evidence at the administrative level. Regarding good cause, the Eleventh Circuit has held:

> [T]he good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. *Milano v. Bowen*, 809 F.2s 763, 767 (11th Cir. 1987). The requirement was designed to prevent claimants from attempting to withhold evidence and to avoid the danger of encouraging them to seek after-acquired evidence, and then use such evidence as an unsanctioned backdoor means of appeal. *Id.* (quoting *Szubak v. Secretary*, 745 F.2d 831, 834 (3d Cir. 1984)).

*Hunt v. Colvin*, 2015 WL 727942, at *6 (N.D. Ala. Feb. 19, 2015) (internal quotations omitted). "Further, neither procrastination nor oversight are appropriate bases to establish good cause." *Lindsey v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS, at *32 (M.D. Fla. Sept. 21, 2017) (citing *Caulder*, 791 F.2d at 879; *Rosenkranz v. Comm'r of Soc. Sec.*, 2013 WL 2108144, at *5 (N.D. Ala. May 15, 2013)).

Here, the ALJ rendered her decision on January 15, 2019 and the Appeals Council denied Claimant's request for review on December 2, 2019. Claimant had ample time to obtain the opinion during the administrative process. It was no secret that the 2018 questionnaire reflected the opinion that Claimant's limitations were first present in 2016 after the date last insured and that the questionnaire was based on subjective complaints. Nothing prevented Claimant from obtaining an opinion at any point during the administrative process to show that his limitations

were not substantially different in November 2015. Instead, Claimant waited until March 24, 2019 to request Langel and Datta's review and the response was inexplicably delayed until January 2020, after the Appeals Council's decision.

While Claimant and his attorney had no control over the length of time it took for Langel and Datta to respond, the Court still fails to understand why Claimant could not have obtained an opinion regarding the onset of his limitations at an earlier time. As Claimant states, Datta and Langel were "asked to base their opinion on *past* treatment as well as a review of treatment notes for the period November 12, 2014 through May 3, 2016 from Joseph Strater, the chiropractor." Doc. 29 at 24 (emphasis added). There is no good cause to wait until March 2019 to even begin the process of seeking the desired opinion.

Claimant also attempts to justify the failure to obtain the opinion at an earlier date because it was new counsel who advised him to do so. Doc. 29 at 26. The Court doubts that good cause exists every time a litigant obtains new counsel who acquires evidence that a previous attorney did not request. In any event, Claimant's current attorney began representing him on February 25, 2019 (*See* R. 14), which was approximately nine months before the administrative proceedings ended and did not obtain the "new evidence" until 51 days after the Appeals Council's decision.

Without explanation, Claimant states that he was unable to obtain the opinion until 10 months after his counsel requested it from Langel and Datta. Again, while the Court does not believe that Claimant and his counsel controlled the date of Langel and Datta's response, there is no adequate reason offered as to why the opinion could not be acquired during the process with the Appeals Council. Indeed, the record reflects that on March 13, 2019, the Appeals Council granted Claimant's attorney's request for additional time to present legal argument before the Appeals Council acted on the case. R. 9., 153. The Appeals Council stated that it would not act

for 25 days and if nothing is heard from counsel within that period of time then the Appeals Council would assume that counsel does not want to send more information and it would proceed with the action based on the record before it. R. 9-10. As the Commissioner contends, Claimant apparently never sought an additional extension of time and there is nothing to show that he was prevented from going back to his providers and obtaining an opinion allowing the Appeals Council the opportunity to review.

Based on these facts, the Court finds that Claimant has not established good cause under the third prong and his request for remand under sentence six is denied.

### **CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED** and Claimant's request for remand is **DENIED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on March 4, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties